UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOVEPREET SINGH,<br><br>     Petitioner,<br><br>   v.<br><br>MARK BOWEN, Warden of the<br>Adelanto ICE Processing Center et al.,<br><br>     Respondents. | Case No. 5:26-cv-00486-MCS-PVC<br><br>**ORDER RE: MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION (ECF NO. 5)** |

Petitioner Lovepreet Singh brings this action for a writ of habeas corpus. (Pet., ECF No. 1.) Petitioner filed a motion for a temporary restraining order and preliminary injunction. (Mot., ECF No. 5.) The Court ordered briefing on the application. (Order Setting Br. Schedule, ECF No. 6.) Respondents Mark Bowen, in his official capacity as the Warden of the Adelanto Immigration and Customs Enforcement ("ICE") Processing Center; Kristi Noem, in her official capacity as the Secretary of the Department Homeland Security ("DHS"); Todd Lyons, in his official capacity as the Acting Director of ICE; and Pamela Bondi, in her official capacity as Attorney General, filed a brief opposing the application. (Opp'n, ECF No. 9.) The Court heard the application on February 18, 2026. (Mins., ECF No. 10.)

1

## I.    BACKGROUND

Petitioner is an Indian citizen who entered the United States without inspection on September 10, 2024. (Pet. ¶¶ 1, 13.) At some point, DHS issued Petitioner a Notice to Appear in Immigration Court that charged him with being "an alien present in the United States who has not been admitted or paroled." (*Id.* ¶ 14.) Thereafter, DHS released Petitioner pursuant to an Order of Release on Recognizance so that Petitioner could pursue an asylum claim. (*Id.* ¶ 15.) Petitioner then filed an I-589 application for asylum, and DHS issued him a Form I-766 Employment Authorization Document. (*Id.* ¶¶ 16–17.) On June 26, 2025, Petitioner attended an immigration court hearing relating to his asylum application. (*Id.* ¶ 18.) ICE detained him in the hallway outside the immigration court at the hearing's conclusion. (*Id.* ¶ 19.) Since June, Petitioner has been held at the Adelanto ICE Processing Center. (*Id.* ¶ 21.) His asylum application is pending with the Executive Office for Immigration Review, and he is not subject to an administrative final removal order. (*Id.* ¶ 22.)

Respondents represent, and Petitioner has not disputed, that Petitioner has received two bond hearings since ICE detained him. (Opp'n 1.) The most recent bond hearing was conducted on January 8, 2026, pursuant to *Rodriguez v. Robbins*, 715 F.3d 1127 (9th Cir. 2013). (*Id.*) At that hearing, the immigration judge found that the government had met its burden to show by clear and convincing evidence that Petitioner is a flight risk. (Bond Order, ECF No. 9-1.) Based on that finding, the immigration judge denied Petitioner's bond request. (*Id.*) At the hearing on the instant motion, Petitioner's counsel indicated that Petitioner is in the process of appealing that bond denial with the Board of Immigration Appeals.

Petitioner claims that his detention violates his rights under the Immigration and Nationality Act ("INA") and the Due Process Clause of the Fifth Amendment. (Pet. ¶¶ 24–52.) He seeks an order directing Respondents to immediately release Petitioner from custody and enjoining Respondents from rearresting or re-detaining him "absent compliance with constitutional protections." (Proposed Order, ECF No. 5.)

2

## II.   LEGAL STANDARD

The standards governing temporary restraining orders and preliminary injunctions are essentially the same. *See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). "A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Id.* at 20. The Ninth Circuit also employs a "version of the sliding scale approach" where "a stronger showing of one element may offset a weaker showing of another." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). Under this approach, an injunction may issue if the plaintiff shows that serious questions go to the merits, the balance of hardships tips sharply toward the plaintiff, the plaintiff is likely to suffer irreparable injury, and an injunction is in the public interest. *Fraihat v. U.S. Immigr. & Customs Enf't*, 16 F.4th 613, 635 (9th Cir. 2021).

## III.   DISCUSSION

The Court has jurisdiction to consider Petitioner's claims under 28 U.S.C. § 2241. *See Trinidad y Garcia v. Thomas*, 683 F.3d 952, 956 (9th Cir. 2012) (en banc) ("The writ of habeas corpus historically provides a remedy to non-citizens challenging executive detention.").

Notwithstanding the Court's jurisdiction, the application must be denied because Petitioner fails to demonstrate that he is likely to succeed on the merits of his claims. "Likelihood of success on the merits is the most important factor," *California v. Azar*, 911 F.3d 558, 575 (9th Cir. 2018) (internal quotation marks omitted), which "is especially true for constitutional claims," *see Jr. Sports Mags. Inc. v. Bonta*, 80 F.4th 1109, 1115 (9th Cir. 2023).

The Fifth Amendment provides that "[n]o person shall . . . be deprived of . . . liberty . . . without due process of law." U.S. Const. amend. V. That protection extends to all persons in the United States, "including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *See Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process Clause] protects." *Id.* at 690; *see also United States v. Salerno*, 481 U.S. 739, 755 (1987) ("In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception."). "Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty." *Garro Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025) (collecting cases).

In *Morrissey v. Brewer*, the Supreme Court recognized that the decision to release a criminal defendant from custody on parole creates "at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions," generating a liberty interest that "is valuable and must be seen as within the protection of" due process. 408 U.S. 471, 482 (1972). District courts in this circuit consistently recognize that this principle extends to individuals subject to removal proceedings. *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 969 (N.D. Cal. 2019) ("Just as people on preparole, parole, and probation status have a liberty interest, so too does [a noncitizen] have a liberty interest in remaining out of custody on bond."); *accord Garro Pinchi*, 792 F. Supp. 3d at 1032 (collecting cases for the proposition that "even when ICE has the initial discretion to detain or release a noncitizen pending removal proceedings, after that individual is released from custody she has a protected liberty interest in remaining out of custody").

Generally, the Due Process Clause "requires some kind of a hearing *before* the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990). To determine what procedures are constitutionally sufficient to protect a liberty

interest, courts apply the three-part test established in *Mathews v. Eldridge*:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

424 U.S. 319, 335 (1976).

The Ninth Circuit has observed that *Mathews* is "a flexible test that can and must account for the heightened governmental interest in the immigration detention context." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022); *see also Pinnacle Armor, Inc. v. United States*, 648 F.3d 708, 716 (9th Cir. 2011) ("This is not a bright line test, but is flexible depending on the circumstances." (internal quotation marks omitted)).

Here, the petition and motion materials are unclear as to when Petitioner was released pursuant to the Order of Release on Recognizance. (*See* Pet. ¶¶ 13–15.) While Petitioner claims he entered the United States without inspection on September 10, 2024, (*id.* ¶ 13), he does not specify when DHS initially issued him the Notice to Appear in Immigration Court or when DHS made the decision to release him from custody pursuant to the Order of Release on Recognizance, (*see id.* ¶¶ 14–15). The petition and motion materials are also largely silent as to the community ties he developed while he was out of custody between his initial release and his June 2025 arrest. The motion indicates that Petitioner has "built a life in the United States," but it provides no supporting evidence. (*See* Mot. 6.) Without these details, it is challenging for the Court to assess whether Petitioner has indeed developed a liberty interest in remaining out of detention. *See C.A.R.V. v. Wofford*, No. 1:25-CV-01395 JLT SKO, 2025 U.S. Dist. LEXIS 216277, at *26–27 (E.D. Cal. Nov. 1, 2025) (finding a petitioner had a

constitutionally protected liberty interest in remaining out of ICE custody based on the "approximately four years on parole" preceding his re-detention); *Garro Pinchi*, 792 F. Supp. 3d at 1034 ("Ms. Garro Pinchi justifiably relied on the government's implied promise in obtaining employment, taking on financial responsibility for her family members, and developing community relationships. The more than two years that she has spent out of custody since ICE initially released her have only heightened her liberty interest in remaining out of detention."); *Fernández López v. Wofford*, No. 1:25-cv-01226-KES-SKO (HC), 2025 U.S. Dist. LEXIS 205596, at *15 ("Petitioner had been out of custody for nearly four years, and during that time, began a life in the United States, living with her partner and complying with the terms of her release. Her detention denies her that freedom.").

Even if the Court assumes that Petitioner developed a substantial liberty interest in remaining free from detention and should have been afforded a pre-detention hearing before he was re-arrested on June 25, 2025, that does not end the Court's inquiry. Petitioner has received post-detention process, including a bond hearing before an immigration judge on January 8, 2026. (*See* Bond Order.) Here, the Ninth Circuit's reasoning in *Rodriguez Diaz* is instructive. In *Rodriguez Diaz*, the petitioner received a bond hearing two months into his detention, was denied bond, and was subsequently detained for 14 more months. 53 F.4th at 1194–95. The petitioner moved for a new bond and custody redetermination hearing before an immigration judge on the basis of a material change in circumstances, then filed a habeas petition in federal district court when his motion for a new bond hearing was denied. *Id.* at 1195. Analyzing the petitioner's claims under the *Mathews* framework, the Ninth Circuit found that the petitioner had shown that he had a private interest in freedom from prolonged detention. *Id.* at 1207. However, when analyzing the first *Mathews* factor, the Ninth Circuit cautioned that it was "important not to overstate the strength of Rodriguez Diaz's showing," *id.*, noting that the first *Mathews* prong requires the court to "also consider the process he received during this time[] [and] the further process that was available to

6

him," *id.* at 1208. The petitioner "was not without process . . . because a further bonding hearing before an [immigration judge] was available to him throughout the period of his detention upon a showing of materially changed circumstances." *Id.* at 1207.

Moreover, the Ninth Circuit found that the second and third *Mathews* factors weighed against the petitioner. With respect to the risk of erroneous deprivation, the petitioner received an individualized bond hearing before an immigration judge, where he was represented by counsel and had the right to appeal to the Board of Immigration Appeals, and he had the right to seek an additional bond hearing on the basis of materially changed circumstances. *Id.* at 1209. These procedural safeguards ensured that "the agency's decision to detain Rodriguez Diaz was subject to numerous levels of review," such that "the risk of erroneous deprivation would be relatively small." *Id.* at 1210 (internal quotation marks omitted). Finally, with respect to the third factor, the Government has a "significant" interest in enforcing its immigration laws. *Id.* at 1208–09.

Though the *Rodriguez Diaz* petitioner's case arose in a somewhat different procedural posture than Petitioner's present case, the Ninth Circuit's analysis of the process afforded the petitioner is highly relevant to analyzing the significance of the post-deprivation bond hearing that Petitioner received on January 8, 2026. While the Court assumes that Petitioner has shown that he has a private interest in freedom from detention because of his Order of Release on Recognizance, the Court must consider that interest alongside the process Petitioner has been afforded while in detention, including the January bond hearing.

Turning to the second *Mathews* factor, the Court determines that the risk of erroneous deprivation is low because Petitioner has been afforded adequate procedural safeguards. Petitioner has received significantly more process than in other cases in which courts have granted relief under *Mathews. See, e.g.*, *Fernández López*, 2025 U.S. Dist. LEXIS 205596, at *18–19 (granting relief under *Mathews* where petitioner was detained without a pre- or post-detention bond hearing); *Singh v. Andrews*, No. 1:25-

cv-00801-KES-SKO (HC), 2025 U.S. Dist. LEXIS 132500, at *25 (E.D. Cal. July 11, 2025) (same). Here, Petitioner has received two bond hearings before neutral immigration judges where he had the opportunity to challenge his detention, the second of which was a *Rodriguez* hearing where the government bore the burden to prove by clear and convincing evidence that Petitioner is a flight risk. It appears that Petitioner was represented by counsel at that hearing. (*See* Bond Order 1 (addressing the bond denial order to Petitioner's attorney).) Petitioner may appeal the outcome of that bond hearing to the Board of Immigration Appeals. 8 C.F.R. § 236.1(d)(3). And indeed, Petitioner's counsel represented at the hearing on the instant motion that Petitioner is proceeding with an appeal. In addition, if a material change in Petitioner's circumstances occurs, he may seek an additional bond hearing. *Id.* § 1003.19(e).

The second *Mathews* factor also looks to the "probable value, if any, of additional or substitute procedural safeguards." *Mathews*, 424 U.S. at 335. Here, the additional value of any additional procedural safeguards is minimal. Ordering Petitioner released and barring his re-detention absent a pre-detention bond hearing would not meaningfully further mitigate the risk of erroneous deprivation of Petitioner's liberty. Petitioner has already had a bond hearing before an immigration judge and has an avenue to appeal the denial of bond. An additional bond hearing would be duplicative and of little value given that Petitioner has not shown his circumstances have materially changed since January. Moreover, if Petitioner's circumstances do materially change in the future, he may seek an additional bond hearing at any time. To the extent Petitioner seeks release during the pendency of his appeal simply because he disagrees with the merits of the immigration judge's decision, the Court lacks the authority to enter such an order. *See* 8 U.S.C. § 1226(e) ("No court may set aside any action or decision by the Attorney General under this section regarding the detention of any alien or the revocation or denial of bond or parole."); *see also Valenzuela v. Semaia*, No. 5:25-cv-02853-SSS-RAO, 2025 U.S. Dist. LEXIS 256917, at *4 (C.D. Cal. Dec. 10, 2025) ("Although Petitioner may disagree with the outcome of the [immigration judge's]

determination at the bond hearing, this Court does not have jurisdiction to sit as an appellate body over this issue.").

Finally, the Court notes that the Government has a strong interest in enforcing its immigration laws. *See Rodriguez Diaz*, 53 F.4th at 1208 ("[T]he government clearly has a strong interest in preventing aliens from 'remain[ing] in the United States in violation of our law.'" (second alteration in original) (quoting *Demore v. Kim*, 538 U.S. 510, 518 (2003))).

Accordingly, the Court concludes that the process Petitioner has received post-detention is sufficient to protect Petitioner's liberty interest. Petitioner is thus unlikely to succeed on the merits of his Fifth Amendment due process claim.

Petitioner is equally unlikely to succeed on the merits of his INA claim. Petitioner argues that he is not subject to the mandatory detention provision of 8 U.S.C. § 1225(b)(2) because that provision does not apply to noncitizens who, like Petitioner, previously entered and resided in the United States before being apprehended and placed in removal proceedings. (Pet. ¶¶ 25–46; Mot. 4.) Petitioner contends he is subject to 8 U.S.C. § 1226(a) and is entitled to the procedural guardrails provided by the statute, including a bond hearing, the opportunity to be represented by counsel, the right to seek a new hearing based on materially changed circumstances, and the right to an appeal. (Mot. 4.) At the hearing, Respondents' counsel represented that Petitioner is being held pursuant to 8 U.S.C. § 1226(a), not § 1225(b)(2). And, as discussed above, Petitioner has been afforded the procedural protections of § 1226(a), including a bond hearing before an immigration judge where he was represented by counsel. He also actively is appealing the immigration judge's decision to the Board of Immigration Appeals. Petitioner's INA claim thus appears to be moot because Respondents agree that he is detained under § 1226(a) rather than § 1225(b)(2).

///

The Court declines to consider the other *Winter* factors. *See Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (en banc) ("Because it is a threshold inquiry, when a plaintiff has failed to show the likelihood of success on the merits, we need not consider the remaining three *Winter* elements." (cleaned up)).

## IV.    CONCLUSION

The application is denied. The Court dissolves its order restricting Respondents from removing Petitioner from the district pending resolution of the motion. That said, Magistrate Judge Castillo's order enjoining Respondents from "transferring, relocating, or removing Petitioner outside of the Central District of California pending final resolution of this case or further order of the Court," remains in place. (Order 1–2, ECF No. 4). Pursuant to General Order No. 05-07, further proceedings on the merits of the petition are referred to the assigned magistrate judge.

**IT IS SO ORDERED.**

Dated: February 19, 2026

_____
MARK C. SCARSI
UNITED STATES DISTRICT JUDGE